IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BINGSUN INC,
                    *Plaintiff*,

        v.                                          **Civil Action No.**

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED                          **FILED UNDER SEAL**
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,
                    *Defendants*.

**COMPLAINT**

Plaintiff, Bingsun Inc, by and through its undersigned attorney, brings this action against

Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule

A attached hereto (collectively, "Defendants"). In support of its claims, Bingsun Inc alleges as

follows:

**NATURE OF ACTION**

1.        Bingsun Inc brings this action to combat Defendants' counterfeit and infringement

of Bingsun Inc' common law and federally registered trademark MAWCLOS, which is subject of

U.S. Trademark Registration No. 6,507,849 (the "MAWCLOS Mark"). Bingsun Inc specializes in

the design, manufacture, marketing, sale, and distribution of unique clothing and footwear items

under the MAWCLOS Mark. Its federal registration for the MAWCLOS Mark constitutes prima

facie evidence of validity and of Bingsun Inc's ownership and exclusive right to use the

MAWCLOS Mark pursuant to 15 U.S.C. § 1057(b). Jointly attached hereto as **Exhibit 1** are true

and correct copies of the Certificate of Registration for the MAWCLOS Mark, the assignment

records showing Bingsun Inc as the current assignee of all rights and goodwill in the MAWCLOS

1

Mark, as well as the status page for the MAWCLOS Mark obtained through the Trademark Status & Document Retrieval system of the United States Patent and Trademark Office.

2.      E-commerce has exposed brand holders such as Bingsun Inc to significant harm from counterfeiters and infringers hiding behind pseudoidentities. While Bingsun Inc is investing heavily into its MAWCLOS Mark, gaining consumer trust and goodwill through carefully sourced products, effective marketing strategies, and responsive customer support, Defendants are using online storefronts, aliases, sham companies, and other forms of pseudoidentities to pass off inferior imitations as genuine MAWCLOS-branded products and to trade upon Bingsun Inc's established reputation and goodwill.

3.      Because of Defendants' counterfeiting and infringing activities alleged herein, Bingsun Inc has been and continues to be irreparably damaged through consumer confusion, dilution, and loss of control over its reputation, goodwill, and the quality of goods bearing the MAWCLOS Mark.

**PARTIES**

**Plaintiff**

4.      Bingsun Inc is a corporation duly formed in the State of Colorado with the business address at 1414 Ulster St, Denver, Colorado.

5.      Bingsun Inc operates online and transacts with consumers throughout the United States, including within this district.

6.      Bingsun Inc has offered to sell and sold thousands of clothing and footwear items under the MAWCLOS Mark through its authorized online stores and merchant accounts via the online marketplace platform Walmart.com.

**Defendants**

7.      Defendants are individuals and/or business entities of unknown forms who are currently identified by their online store names or aliases, online store URLs, and/or other forms of pseudoidentities listed on Schedule "A" attached hereto.

8.      Upon information and belief, Defendants reside and/or conduct business in the United States and foreign jurisdictions such as the People's Republic of China, source products from the same or similar suppliers in those locations, and/or import their products to shipping and fulfillment centers within the United States for distribution across the United States.

9.      Upon information and belief, Defendants target their business activities toward consumers throughout the United States, including within this district, by conducting pervasive business activities on online marketplace platforms such as Walmart.com, as well as social media platforms and/or fully interactive e-commerce websites through Defendants' operation of, or assistance in the operation of, the fully-interactive online stores and merchant accounts identified on Schedule A (collectively, "Defendants' Online Stores").

10.      Defendants appear to be an interconnected group of individuals or business entities, as Defendants' Online Stores bear common or similar identifiers such as common or similar design elements, common choice of online marketplace platform, the same or substantially similar products, the same or substantially similar product descriptions, the same or similar pricing and sales promotions, and/or the same or substantially similar purchasing and order fulfillment methods. The foregoing similarities establish a logical relationship among Defendants' Online Stores and suggest that Defendants' e-commerce counterfeit and infringement operations arise out of the same series of transactions or occurrences.

11.      As specified hereinafter, Defendants employ common or similar tactics to conceal their true identifies and the full scope of their interworking, and to avoid being shut down or held

accountable for their activities. Such tactics make it virtually impossible for Bingsun Inc to learn the precise scope and mechanism of Defendants' counterfeit network. In the event that more information about Defendants' identities come into light through discovery, Bingsun Inc will take appropriate steps to amend the Complaint.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (Lanham Act jurisdiction), 28 U.S.C. § 1338 (federal trademark and unfair competition jurisdiction), and 28 U.S.C. § 1331 (federal question jurisdiction). The Court has jurisdiction over Bingsun Inc's common law trademark infringement and unfair competition claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

13.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct business and maintain continuous contacts in the Commonwealth of Pennsylvania, including in this district. Moreover, Defendants have promoted, marketed, advertised, offered to sell, and sold goods and/or services under counterfeit marks in the Commonwealth of Pennsylvania, including in this district.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(b)(3) because a substantial part of the events giving rise to the claims occurred in this district, and because each of Defendants directly target consumers in this district through the operation of Defendants' Online Stores. Defendants are involved in the production, marketing, offering for sale, sale, and/or shipping of counterfeit and infringing products to the consumers in this district. Further, Defendants have committed and knowingly participated in the commission of tortious acts causing substantial injury to Bingsun Inc in the Commonwealth of Pennsylvania, including in this district.

## COMMON FACTUAL BACKGROUND

**Bingsun Inc's MAWCLOS Mark**

15.     Bingsun Inc has used and continues to use the MAWCLOS Mark in interstate commerce in connection with the design, manufacture, marketing, distribution, and sale of clothing and footwear products, including those identified on the federal registration for the MAWCLOS Mark (collectively, "Bingsun Inc's Products"). *See* Exh. 1.

16.     On October 5, 2021, the MAWCLOS Mark was registered with the United States Patent and Trademark Office ("USPTO") on its Principal Register.

17.     Currently, the federal registration for the MAWCLOS Mark covers goods identified as "Bathrobes; Blouses; Boots; Corselets; Dresses; Footwear; Pullovers; Pyjamas; Sandals; Shirts; Shoes; Skirts; Slippers; Suits; Swimwear; Trousers; Underclothing; Underpants; Underwear; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Belts; Clothing for babies, toddlers and children, treated with fire and heat retardants, namely, pajamas, jackets, shirts, pants, jumpers; Clothing, namely, folk costumes; Nightgowns; Outerwear, namely, jackets and coats; Sports jerseys; Sports shoes; Sweaters; Swim caps; Swim trunks; T-shirts; Teddies being underclothing; Tops as clothing; Vests; Waistcoats; Wedding dresses" in International Class 25. *See* Exh. 1.

18.     The MAWCLOS Mark has been used in interstate commerce in the United States by Bingsun Inc and its predecessor in interest since at least as early as December 1, 2020.

19.     Through an assignment duly recorded with the USPTO, Bingsun Inc owns all rights in and to the MAWCLOS Mark and the goodwill associated therewith.

20.     Bingsun Inc's federal registration for the MAWCLOS Mark is valid, subsisting, unrevoked, and uncancelled. It constitutes prima facie evidence of validity and of Bingsun Inc's ownership and exclusive right to use the MAWCLOS Mark pursuant to 15 U.S.C. § 1057(b).

21.     The MAWCLOS Mark is distinctive as applied to Bingsun Inc's Products, signifying to the consumers that the products originate from Bingsun Inc and are manufactured to Bingsun Inc's quality control and post-sale service standards.

22.     Bingsun Inc and its predecessors in interest have used the MAWCLOS Mark in instate commerce in the United States exclusively and continuously for a substantial amount of time and has never abandoned it.

23.     Bingsun Inc has carefully monitored and policed the use of the MAWCLOS Mark and has never assigned or licensed the mark to any of the Defendants.

24.     Visibility on the Internet, particularly via Internet search engines such as Google and online marketplaces such as Walmart.com, is critical to Bingsun Inc's online business. Thus, Bingsun Inc expends significant monetary resources on online marketing campaigns, including search engine optimization ("SEO"), paid advertising, and product listing sponsorships. These online marketing campaigns allow Bingsun Inc to fairly and legitimately educate consumers about the products sold under the MAWCLOS Mark and the unique value thereof.

25.     As a result of Bingsun Inc's efforts, members of the consuming public readily associate the MAWCLOS Mark with the unique materials, style, and quality as shown in Bingsun Inc's Products.

26.     As a result of Bingsun Inc's efforts, the MAWCLOS Mark has become famous and represents substantial goodwill on the part of Bingsun Inc.

27.     The goodwill associated with the MAWCLOS Mark is incalculable and of inestimable value to Bingsun Inc.

**Defendants' Infringing Activities**

28.     Defendants have used identical and/or virtually identical reproductions of the MAWCLOS Mark (collectively, "Defendants' Counterfeit Marks") in interstate commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the clothing, fashion, and decorative products listed by and/or originated from Defendants' Online Stores (collectively, "Defendants' Infringing Products.")

29.     Defendants' Infringing Products are identical and/or closely related to Bingsun Inc's Products.

30.     Defendants promoted, advertised, listed, offered to sale, distributed, and sold Defendants' Infringing Products by using Defendants' Counterfeit Marks and passing off as authorized user of the MAWCLOS Mark on online marketplace platforms such as Walmart.com.

31.     Defendants have used and continue to use Defendants' Counterfeit Marks to attract online shoppers to Defendants' Online Stores and pass off as the real owner or authorized users of the MAWCLOS Mark.

32.     Defendants are actively using, promoting, advertising, distributing, selling, and/or offering for sale substantial quantities of their Infringing Products with the knowledge and intent that such products will be mistaken for the genuine MAWCLOS-branded products offered by Bingsun Inc.

33.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing similar, and often times coordinated, advertising and marketing strategies based upon illegal uses of Defendants' Counterfeit Marks. Specifically, Defendants are using their Counterfeit Marks to make Defendants' Online Stores and their respective online product offerings appear more relevant and attractive to consumers searching online for Bingsun Inc's Products or products sold under the MAWCLOS Mark.

34.    By their infringing and counterfeiting activities stated above, Defendants are causing damages to Bingsun Inc through the following means:

   a.  depriving Bingsun Inc of the right to fairly compete for visibility and consumer traffic within online search engine results and online marketplaces;

   b.  reducing the visibility of Bingsun Inc's genuine MAWCLOS-branded products within online search engine results and online marketplaces;

   c.  causing an overall degradation of the value and goodwill associated with the MAWCLOS Mark; and

   d.  unfairly driving up Bingsun Inc's costs to market and sell its genuine products and educate consumers about the MAWCLOS brand.

35.    Defendants' counterfeiting and infringing activities are likely to create and have actually created confusion, mistake, and deception among consumers as to a false connection between Bingsun Inc and Defendants' Infringing Products.

36.    Defendants use their Online Stores, merchant accounts, Walmart Merchant identification numbers, Walmart Partner identification numbers, payment accounts, and other online identities, including those set forth on Schedule A, to accept, receive, process, and deposit payments generated from Defendants' counterfeiting and infringing activities.

37.    Through their counterfeiting and infringing activities, Defendants have amassed substantial revenues and profits riding on the strength and goodwill associated with Bingsun Inc's MAWCLOS Mark.

38.    As Defendants' businesses are entirely operated virtually while most of their operators and owners are located overseas, Defendants are in the position to readily conceal, convert, and transfer their assets to avoid payment of any monetary damages to Bingsun Inc.

39.     Defendants have actual and constructive knowledge of Bingsun Inc's ownership, prior use, and registration of the MAWCLOS Mark.

40.     Defendants have actual and constructive knowledge that they do not have authorization, consent, permission, or license by Bingsun Inc to use the MAWCLOS Mark.

41.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Bingsun Inc's rights in the MAWCLOS Mark, for the purpose of trading on Bingsun Inc's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Bingsun Inc and the consuming public will be continuously and irreversibly harmed.

## COUNT I
### Trademark Infringement and Counterfeiting
### (15 U.S.C. § 1114)

42.     Bingsun Inc repeats and reiterates the allegations set forth above as though fully set forth at length herein.

43.     Bingsun Inc is the exclusive owner of the federally-registered MAWCLOS Mark.

44.     Bingsun Inc's MAWCLOS Mark is highly distinctive. Through Bingsun Inc's continuous brand protection and product quality control, American consumers have come to expect the highest quality from the products offered, sold, and/or marketed under the MAWCLOS Mark.

45.     Defendants have sold, offered for sale, marketed, distributed, and advertised products using counterfeits and/or infringing reproductions of the MAWCLOS Mark without Bingsun Inc's consent, permission, or license.

46.     The federal trademark registration for the MAWCLOS Mark is in full force and effect. Upon information and belief, Defendants have knowledge of Bingsun Inc's rights in the

MAWCLOS Mark and are willfully infringing and intentionally using counterfeits of Bingsun

Inc's MAWCLOS Mark. Defendants' willful, intentional, and unauthorized use of the

MAWCLOS Mark is likely to cause and is causing confusion, mistake, and deception as to the

origin and quality of Defendants' Infringing Products among the general public.

47.    Defendants' acts as alleged herein constitute willful trademark infringement and

counterfeit under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48.    Bingsun Inc has no adequate remedy at law, and if Defendants' actions are not

primarily and permanently enjoined, Bingsun Inc will continue to suffer irreparable harm to its

business, trade, reputation, and the goodwill associated with the MAWCLOS Mark.

49.    The injuries and damages sustained by Bingsun Inc have been directly and

proximately caused by Defendants' wrongful advertisement, promotion, distribution, offering for

sale, and sale of products in connection with the MAWCLOS Mark.

50.    Based on Defendants' actions as alleged herein, Bingsun Inc is entitled to injunctive

relief, damages for the irreparable harm that Bingsun Inc has sustained and will sustain as a result

of Defendants' infringing activities, and all gains, profits and advantages obtained by Defendants

as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages up

to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and

reasonable attorneys' fees and costs.

**COUNT II**
**Unfair Competition and False Designation of Origin**
**(15 U.S.C. § 1125(a))**

51.    Bingsun Inc repeats and reiterates the allegations set forth above as though fully set

forth at length herein.

52.     American consumers associate the MAWCLOS Mark with Bingsun Inc as the exclusive source of the goods provided under that mark.

53.     Defendants' unauthorized advertisement, promotion, distribution, offering for sale, and sale of products in connection with the MAWCLOS Mark have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association with Bingsun Inc, and as to the origin, sponsorship, and approval of Defendants' Infringing Products by Bingsun Inc, in violation of Section 43 of the Trademark Act, 15 U.S.C. § 1125(a).

54.     Defendants' acts as alleged herein have permitted and will permit Defendants to earn substantial revenues and profits riding on the strength and goodwill associated with Bingsun Inc's MAWCLOS Mark.

55.     Defendants knew or should have known by the exercise of reasonable care that their acts as alleged herein would cause confusion, mistake, and deception among consumers.

56.     Defendants' false designation of the origin of their Infringing Products is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Bingsun Inc has suffered and is continuing to suffer damages and irreparable harm to its businesses, trade, reputation, and goodwill associated with the MAWCLOS Mark as a result of the Defendants' false designation of the origin of their Infringing Products.

58.     Bingsun Inc has no adequate remedy at law. If Defendants' actions are not primarily and permanently enjoined, Bingsun Inc will continue to suffer irreparable harm to its business, trade, reputation, and the goodwill associated with the MAWCLOS Mark.

59.     Based on Defendants' actions as alleged herein, Bingsun Inc is entitled to injunctive relief, damages for the irreparable harm that Bingsun Inc has sustained and will sustain as a result

of Defendants' infringing activities, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## COUNT III
## Common Law Trademark Infringement

60.    Bingsun Inc repeats and reiterates the allegations set forth above as though fully set forth at length herein.

61.    Bingsun Inc is the owner of all common law rights in and to the trademark consisting of the wording "MAWCLOS" as it relates to Bingsun Inc's Products.

62.    Defendants have sold, offered for sale, marketed, distributed, and advertised products using counterfeits and/or infringing reproductions of Bingsun Inc's MAWCLOS Mark without Bingsun Inc's consent, permission, or license.

63.    Defendants' current and future uses of Defendants' Counterfeit Mark in connection with Defendant's Infringing Products are likely to cause confusion, mistake, and deception among the consuming public as to the origin and quality of such goods and constitute trademark infringement in violation of the common law of the Commonwealth of Pennsylvania.

64.    Defendants' acts have caused direct and proximate damage to Bingsun Inc.

65.    As a result of Defendants' infringing acts alleged herein, Bingsun Inc has suffered and is continuing to suffer irreparable injury, for which Bingsun Inc has no adequate remedy at law.

## COUNT IV
## Common Law Unfair Competition

66.     Bingsun Inc repeats and reiterates the allegations set forth above as though fully set forth at length herein.

67.     Defendants and Bingsun Inc are direct competitors in the business of manufacturing, promoting, and selling clothing items and other articles of fashion.

68.     Defendants have pass off inferior imitations as Bingsun Inc's genuine products sold under the MAWCLOS Mark.

69.     Defendants have appropriated Bingsun Inc's MAWCLOS Mark with the intent to falsely link Defendants' Infringing Products with Bingsun Inc and capitalize on Bingsun Inc's goodwill.

70.     Defendants' current and future uses of Defendant's Counterfeit Mark in connection with Defendant's Infringing Products are likely to cause confusion, mistake, and deception as to the origin and quality of such goods.

71.     Defendants' means of competition is tortious with respect to Bingsun Inc and constitutes unfair competition in violation of the common law of the Commonwealth of Pennsylvania.

72.     Defendants' acts have caused direct and proximate damage to Bingsun Inc.

73.     As a result of Defendants' unfair competitive activities alleged herein, Bingsun Inc has suffered and is continuing to suffer irreparable injury, for which Bingsun Inc has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Bingsun Inc prays for judgment against all Defendants listed on Schedule A hereto and an award of reliefs as follows:

13

(1) Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, enjoining Defendant, together with its employees, agents, partners, officers, directors, owners, shareholders, members, principals, subsidiaries, affiliates, branches, licensees, assignees, and all persons in active concert or participation with any of them, from the following acts –

    a. Manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell Defendants' Infringing Products in the United States;

    b. Infringing, counterfeiting, or diluting Bingsun Inc's MAWCLOS Mark;

    c. Using the MAWCLOS Mark in any form in connection with goods related to Bingsun Inc's Products;

    d. Using any mark, logo, design, designation, product title, or other indicator that is confusingly similar to and/or dilutive of Bingsun Inc's MAWCLOS Mark;

    e. Using any mark, logo, design, designation, product title, or other indicator that may be applied to falsely advertise Defendants' Infringing Products as being sponsored by, authorized by, endorsed by, or in any way associated with Bingsun Inc or its MAWCLOS brand;

    f. Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent that Defendants' Infringing Products as being those offered under the MAWCLOS Mark, or in any way endorsed by the Bingsun Inc;

14

g. Representing by any means whatsoever, directly or indirectly, that Defendants, any products or services offered by Defendants, or any activities undertaken by Defendants, are associated or connected in any way with Bingsun Inc and its MAWCLOS Mark;

h. Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs 1(a)-(g);

(2) Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to Defendants in connection with the sale and distribution of goods bearing and/or using counterfeits of the MAWCLOS Mark;

(3) Entry of an order directing Defendant to destroy and remove all products, online product listings, packaging, signage, advertisements, promotional materials, stationery, forms, and/or any other materials and things that contain the MAWCLOS Mark and any other marks, logos, designs, designations, product titles, or indicators that are confusingly similar to and/or dilutive of the MAWCLOS Mark;

(4) Entry of an order directing Defendants to account for and pay to Bingsun Inc any and all profits arising from Defendants' use of the MAWCLOS mark, trebled in accordance with 15 U.S.C. § 1117, or, at Bingsun Inc's election with respect to Count I and Count II, that Bingsun Inc be awarded statutory damages from each Defendant in the amount of two million U.S. dollars ($2,000,000.00) per counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act;

(5) Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action;

(6) Entry of an award of pre-judgment interest on the judgment amount;

(7) Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with Defendants' Online Stores, used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

(8) Granting any other relief this Court deems just and proper.


Respectfully Submitted,

Dated: September 22, 2025          By:    /s/ Bole Yuan
                                          BOLE YUAN

                                          LAW OFFICE OF BOLE YUAN, ESQ.
                                          1617 John F. Kennedy Blvd., Suite 1060
                                          Philadelphia, PA 19103
                                          T: (215)901-8324
                                          Email: stevenyuan@lawvictor-ip.com

                                          *Attorney for Plaintiff, Bingsun Inc*

16